UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROBERT A. MCNEIL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 17-1720 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5, 16, 18, 20, 21, |
| | : | | 23, 26, 31, 37 |
| G. MICHAEL HARVEY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING AS MOOT OTHER PENDING MOTIONS

### I. INTRODUCTION

*Pro se* plaintiffs in this case seek declaratory judgments against three U.S. District Court judges and one U.S. magistrate judge for alleged violations of their First and Fifth Amendment rights. Plaintiffs' interactions with Defendants stem from their refusal to pay income taxes, which has resulted in Plaintiffs' pursuit by the Internal Revenue Service ("IRS"). Plaintiffs allege that the IRS has been pretending to file substitute income tax returns on their behalf and that through this "record falsification program" the IRS has subjected them to harsh penalties such as monetary fines and incarceration. In response, Plaintiffs filed numerous lawsuits against the Department of Justice ("DOJ") and the IRS, and then against three of the judges who presided over such cases. Defendants in this case are the U.S District Court and U.S. magistrate judges who presided over ten of the underlying cases. The judges dismissed or recommended dismissal of the underlying cases as barred by the Anti-Injunction Act, and in the case against the judges, for lack of standing as well. Plaintiffs now seek a declaratory judgment against Defendants

1

acknowledging that Defendants failed to adjudicate their cases on their merits, as Plaintiffs believe they were constitutionally required to do.

Defendants have moved to dismiss this case under Rules 12(b)(1) and 12(b)(6) on five grounds, arguing that (1) Plaintiffs cannot establish redressability, and therefore lack Article III standing; (2) the Court lacks jurisdiction to hear a *Bivens* action seeking equitable relief because *Bivens* does not authorize suits seeking equitable relief; (3) the Declaratory Judgment Act excludes matters involving taxation; (4) the proper avenue for relief of Plaintiffs' alleged grievances is through appeal; and (5) Plaintiffs have failed to state a claim upon which relief can be granted because the court is not a reviewing court and cannot provide the relief Plaintiffs seek. Because Plaintiffs have failed to establish that they have Article III standing, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction. Further, because the Court dismisses the case for lack of subject matter jurisdiction, the remaining motions pending in this case are denied as moot.

## II. FACTUAL BACKGROUND

This case stems from a series of suits filed by Plaintiffs against the IRS, DOJ, and other federal officials.[1] Plaintiffs allege that IRS employees used falsified digital records to pretend to prepare substitute income tax returns on their behalf. Am. Compl. ¶ 3, ECF No. 11. Plaintiffs claim that both the IRS and the DOJ use the IRS's "record falsification program" to enforce

---

[1] *Ellis v. Commissioner of Internal Revenue*, No. 14-cv-471 (D.D.C.); *DePolo v. Ciraolo-Klepper*, No. 15-cv-2039 (D.D.C.); *DeOrio v. Ciraolo-Klepper*, No. 16-cv-2089 (D.D.C.); *Crumpacker v. Ciraolo-Klepper*, No. 16-cv-1053 (D.D.C.); *Podgorny v. Ciraolo-Klepper*, 16-cv-1768 (D.D.C.); *McGarvin v. McMonagle*, 16-cv-1458 (D.D.C.); *Dwaileebe v. Martineau*, 16-cv-420 (D.D.C.); *Ford v. Ciraolo-Klepper*, 17-cv-34 (E.D. Cal.); *Ellis v. Jackson*, 16-cv-2313 (D.D.C.); *Stanley v. Lynch*, 17-cv-22 (D.D.C.).

income tax law on nontaxpayers like them. *Id.* ¶ 1. They believe that due to this system, their property is being stolen and they are being wrongly incarcerated. *Id*. Plaintiffs claim that, in pursuing the underlying cases, the core factual contention they sought to have confirmed was whether the IRS "never actually prepares substitutes for [income tax] returns, but rather inputs computer codes to make it appear as though a substitute [income tax] return has been filed." *Id.* ¶ 2 (quoting Gov't Mot. Consolidate Cases, *Stanley v. Lynch,* No. 17-cv-22, ECF No. 11 (Mar. 8, 2017)). Citing *Long v. Rasmussen*, Plaintiffs contend that

> [t]he revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers, and not to nontaxpayers. The latter are without their scope. No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and remedies in due course of the law. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws.

*Id.* ¶ 2, n.1. In essence, Plaintiffs' underlying cases revolved around a belief that the Internal Revenue Code does not apply to them. These cases were dismissed for lack of standing and failure to comply with the Anti-Injunction Act. *See id.* ¶ 3.

Plaintiffs contend that no court has determined whether the Plaintiffs' core allegation, raised in the underlying cases, is true. *Id.* ¶ 3. Instead, they believe that the defendant judges who presided over their cases invariably fabricated and attributed to them forms of relief they did not seek. *Id.* They believe that Defendants also fraudulently drew each case within the prohibitions of the Anti-Injunction Act to avoid making the factual determination needed to adjudicate their cases. *Id.* In short, Plaintiffs allege that Defendants, acting as federal judges, but whom Plaintiffs have sued in their personal capacities only, participated in an IRS and DOJ scheme by conspiring to dismiss their cases in a fraudulent manner in order to avoid adjudicating their cases on their actual merits. *Id*.

Plaintiffs now seek a six-part declaratory judgment answering the following questions in regard to each of the ten cases dismissed:

1) Did the Plaintiff[s] complain, as their core fact contention, that IRS never prepares substitute income tax returns on any date shown in IRS' falsified Individual Master File records concerning the targeted nontaxpayer?
2) Did the attorney appointed to adjudicate that core fact controversy do so?
3) Did the attorney falsify the case record by attributing to litigants relief they did NOT seek, i.e.[], that Plaintiffs supposedly sought to enjoin IRS from preparing substitute income tax returns, then dismiss the case (or recommend dismissal) on the basis of that fabrication, thus drawing each case, by fraud, within the ambit of Anti-Injunction Act prohibitions?
4) Does the uniform falsification by attorneys, of the federal record in TEN separate fully-paid cases, provide strong circumstantial evidence victims' cases, as filed, are meritorious?
5) Does the uniform falsification by attorneys, of the record in TEN Class cases, violate each Plaintiff[]'[s] right to adequate, effective and meaningful access to courts and to due process of law, and constitute, as well, obstruction of the administration of justice?
6) When attorneys uniformly falsify the record of TEN cases to *avoid* adjudicating their merits, do the dismissals have any precedential value or preclusive effect in regard to the unadjudicated fact controversy raised by Class victims?

*Id.* ¶ 4.

Plaintiffs have taken pains to emphasize that they are not challenging any actions taken by the IRS, DOJ, or any executive branch personnel to enforce the income tax. *Id.* ¶¶ 5-6. Furthermore, they claim that they do not seek a declaratory judgment assessing any income tax liability. *Id*. Instead, Plaintiffs believe that if the Court were to grant their six-part declaratory judgment against Defendants, "such judgment would allow Class victims to re-file their cases and secure resolution of the core fact controversy they have so meticulously described." *Id.* ¶ 7.

Defendants have moved to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. *See* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 23. Their motion is now ripe for decision.

### III. LEGAL STANDARD

When evaluating a motion to dismiss, a court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Grant v. Ent. Cruises, Inc.*, 282 F. Supp. 3d 114, 116 (D.D.C. 2017) (quoting *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard governs the consideration of motions filed under both Rule 12(b)(1) and 12(b)(6). *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(1), plaintiffs bear the burden of proving that the court has subject-matter jurisdiction to hear their claims. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'Plaintiff[s'] factual allegations in the complaint . . . will bear closer

5

scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007).

### IV. ANALYSIS

Defendants have moved to dismiss on five grounds. Defendants first argue that Plaintiffs' suit should be dismissed because *Bivens* does not authorize suits for equitable relief. Defs.' Mot. at 4. Defendants believe that this remedial limitation deprives the court of subject-matter jurisdiction over this case. *Id.* Second, Defendants argue that Plaintiffs lack standing to bring this case for declaratory relief against Defendants in their personal capacities because Defendants in their personal capacities have no ability to redress Plaintiffs' injuries. *Id.* at 5. Third, Defendants argue that, if this matter is interpreted as an attempt to obtain a declaratory judgment regarding the assessment of taxes, it is barred by the tax exception to the Declaratory Judgment Act. *Id.* (citing 28 U.S.C. § 2201(a)). Fourth, Defendants claim that the proper avenue for relief is an appeal, rather than a collateral declaratory judgment. *Id.* at 5–6. Fifth, Defendants briefly argue that the amended complaint should be dismissed for failure to state a claim. *Id.* at 7. Defendants do not argue that they are judicially immune from declaratory relief. *See generally* Defs.' Mot. [2]

---

[2] Although the D.C. Circuit has not addressed whether judicial immunity extends to equitable relief and Defendants did not raise this issue in their motion, judges acting in their judicial capacity, as here, are likely to be absolutely immune from actions for equitable relief under *Bivens*. *See Hill v. Traxler*, No. 13-1037, 2013 WL 4580456 (D.D.C. July 9, 2013), *aff'd*, 550 F. App'x 1 (D.C. Cir. 2013) (citing *Edmonson v. Lee*, No. 08-149, 2008 WL 2080912, at *3 (S.D. Miss. May 9, 2008) (dismissing as frivolous complaint by state prisoner against federal judges because "the judicial Defendants are absolutely immune from suit for monetary damages as well as equitable relief")); *Wightman v. Jones*, 809 F. Supp. 474, 479 (N.D. Tex. 1992) (concluding that judicial immunity bars *Bivens* claims against judges seeking both declaratory and equitable relief). Absolute immunity prevents both "horizontal appeals" from one district court to another and "reverse reviewing" a ruling of the Court of Appeals by a District Court. *See Mullis v. United States Bankruptcy Court for the District of Nevada*, 828 F.2d 1385, 1392 – 93 (9th Cir. 1987), *cert. denied*, 486 U.S. 1040 (1988); *Newsome v. Merz*, No. 00–4307, 2001 WL 1006189, at *1 (6th Cir. Aug. 21, 2001); *Bolin v. Story*, 225 F.3d 1234, 1239–1242 (11th Cir.

Plaintiffs respond that the Court possesses subject matter jurisdiction, through federal question jurisdiction, over this case. Pls.' Resp. at 2. They specify that they have brought suit for violations of *Pierson v. Ray*, in which the Supreme Court stated that "it is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases." Pls.' Resp. at 2 (quoting 386 U.S. 547, 554 (1968)). Ignoring the qualification that judges must decide all cases *within their jurisdiction*, Plaintiffs argue that because their cases were dismissed for lack of subject matter jurisdiction, they were wrongfully dismissed before their claims were adjudicated on their merits. *Id.* Plaintiffs further assert that because they seek declaratory rather than injunctive relief, they are not trying to compel Defendants to take any particular action, and therefore that cases such as *Thomas v. Wilkins*, 61 F. Supp. 3d 13 (D.D.C. 2014) or *Sibley v. U.S. Supreme Court*, 786 F. Supp. 2d 338 (D.D.C. 2011), which bar such injunctive relief against federal judges, are inapposite. Pls' Resp. at 3. To support their argument that courts may grant declaratory relief against federal judicial officers, Plaintiffs cite to several cases, including *Pulliam v. Allen*, 466 U.S. 522 (1984), in which federal courts granted equitable relief against state court judges and judicial officers, and one in which, in dicta, a court observed that, if *Pulliam* did apply to federal judges (which the court suggested it did not), the only relief available to plaintiffs suing a federal judge under *Bivens* would be a declaratory judgment. *See* Pl.'s Resp. at 4 (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)). Plaintiffs further explain that they have a right to sue the "attorneys" (referring to the defendant judges) in any

---

2000); *Moore v. Brewster*, 96 F.3d 1240, 1243–44 (9th Cir. 1996). This immunity exists "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (quoting *Bradley v. Fisher*, 13 Wall. 335, 349 n. 16 (1872)).

7

capacity of their choice because they have met Article III's standing requirements. *Id.* at 2. [3]

Finally, Plaintiffs assert that no actual appellate remedy existed in their cases because the D.C.

Circuit dismissed their appeals. *Id.* at 5.

For the reasons set forth below, the Court finds that it does not have subject matter jurisdiction over this case because Plaintiffs lack Article III standing. Because the Court lacks subject matter jurisdiction over this case, the Court denies as moot the remaining motions pending in this case, none of which have any bearing on this Court's subject matter jurisdiction.

### A. Standing

Defendants have moved to dismiss Plaintiffs' Amended Complaint for lack of standing. In particular, Defendants argue that "[e]ven assuming Plaintiffs have suffered injuries as a result of Defendants' conduct, Plaintiffs lack standing to bring a suit against Defendants in their individual capacities because Defendants, in their individual capacities, cannot redress those

---

[3] Plaintiffs also claim that because they have sued the defendant judges in their personal capacities, Defendants are not entitled to legal representation by the DOJ. Under this pretense, Plaintiffs object to defense counsel's filings, including the motion to dismiss. *See* Resp. at 1; *see also* Mot. Strike, ECF No. 18; Mot. Show Authority, ECF No. 21; Emergency Mot. Compel, ECF No. 31; Mot. Strike, ECF No. 37. Federal regulations provide that "a federal employee . . . may be provided representation in civil . . . proceedings in which he is sued, subpoenaed, or charged in his individual capacity, . . . when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States." 28 C.F.R. § 50.15(a). "Under the clear language of the regulation, . . . it is within the Attorney General's judgment and discretion, not this court's, to determine whether the allegations against [Defendants] 'reasonably appear to have been performed within the scope of [their] employment' and whether such representation is in the public interest." *Al-Tamimi v. Adelson*, 16-cv-445, 2016 WL 10655512, at *1 (D.D.C. Dec. 15, 2016) (quoting 28 C.F.R. § 50.15(a)); *see also Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100 (D.D.C. 2012) ("[T]he language of the regulations makes clear it is for the Government to determine whether federal employees should receive representation."); *Falkowski v. E.E.O.C.*, 783 F.2d 252, 253 (D.C. Cir. 1986) (declining to review Attorney General's decision not to provide representation because decision fell within discretionary authority). Therefore, the Court will not interfere with the DOJ's decision to represent Defendants, who, though sued in their personal capacities, have been sued for the orders they issued as federal judges.

8

injuries." Defs.' Mot. at 5. Plaintiffs respond that they have standing because "a favorable decision secured by Plaintiffs in this case, (that the attorneys did NOT adjudicate the merits of their underlying cases), would give Plaintiffs standing to re-file those cases, and thus eventually, they could finally secure access to adequate, meaningful and effective judicial relief from the underlying IRS record falsification program." Pl.'s Resp. at 5. Plaintiffs are mistaken.

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," and a party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In order to have standing to bring suit, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (alterations in original) (citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

In reviewing a question of standing, the Court must not evaluate the merits of the case, but instead must analyze these elements as if plaintiffs were to be successful in their claim. *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)). Here, even if the Court were to assume for the purposes of this analysis that Plaintiffs have suffered injuries in fact and that those injuries are fairly traceable to

9

the conduct of the defendants, Plaintiffs have still failed to establish standing because the relief they seek would not redress their injuries.

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, w[ould] likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996)). It "requires that the court be able to afford relief *through the exercise of its power,* not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (emphasis in original). To demonstrate that their injuries are redressable, plaintiffs must show in the first instance that the court is capable of granting the relief they seek. *See Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2010) (plaintiffs could not establish redressability because "[i]t [was] impossible for th[e] court to grant [their requested] relief"); *Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (indicating that the "'redressability' element of standing" entails the question of "whether a federal court has the power to grant [the plaintiff's requested] relief"); *Lozansky v. Obama*, 841 F.Supp.2d 124, 132 (D.D.C. 2012) ("Plaintiffs . . . lack standing because the Court cannot issue the requested writ of mandamus, as they do not have the authority to do so, and thus cannot redress the [claimed] injury.").

Here, the Court is not capable of granting the relief Plaintiffs seek because the declaratory judgment Plaintiffs seek would not void or recognize as void Defendants' orders, as Plaintiffs seem to believe it would. *See* Pl.'s Resp. at 10 ("The declaratory judgment sought would, moreover, not 'overturn' the orders issued by the Defendants, . . . but[] would simply recognize them to be void."). Federal district courts lack the power to void other federal courts' orders through a collateral attack. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("[It]

10

is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."). Indeed, "[t]he doctrine barring improper collateral attacks has been applied specifically to parties seeking a declaratory judgment challenging a ruling in a separate action because '[d]eclaratory relief against a judge for final actions taken within his or her judicial capacity is instead available by way of a direct appeal of the judge's order.'" *Sibley v. Roberts*, 224 F. Supp. 3d 29, 38 (D.D.C. 2016) (quoting *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013)).

Plaintiffs argue that this long-recognized principle does not apply to this case for two reasons. First, Plaintiffs argue that the orders with which they take issue were not issued by Defendants acting in their judicial capacities because "an extra-judicial scheme to jointly falsify, and to use falsified court records to AVOID adjudicating the merits of a Class of TEN cases, can never be legitimately sanitized as a 'judicial function.'" Pl.'s Resp. at 5. Second, Plaintiffs contend that appeals were not available to them in their ten underlying cases because eight of their appeals were dismissed. *Id.* at 7–8. Both arguments are unavailing.

First, Defendants were clearly acting within their judicial capacities when they dismissed Plaintiffs' underlying lawsuits. While Plaintiffs allege a scheme in which Defendants discussed the underlying cases with each other and all chose to dismiss those cases on allegedly erroneous—or as Plaintiffs characterize it, "fraudulent"—grounds, these allegations do not amount to an allegation that these judges were acting outside of their capacities as federal judges when they dismissed Plaintiffs' cases, or in the case of Magistrate Judge Harvey, recommended that their cases be dismissed. *See* Am. Compl. ¶ 11–76 (describing the actions Plaintiffs believe Defendants took while adjudicating the underlying cases). Determining whether the court has

11

subject matter jurisdiction over a lawsuit, and dismissing the lawsuit if it does not, is a fundamental duty of a federal judge. *See Am. Petro. Inst. v. SEC*, 714 F.3d 1329, 1336 (D.C. Cir. 2013) ("[A] federal court has the duty to determine whether it has subject-matter jurisdiction." (quoting *Bouchet v. Nat'l Urban League, Inc.*, 730 F.2d 799, 805 (D.C. Cir. 1984))). Despite what Plaintiffs allege may have led to Defendants' decisions to dismiss or recommend the dismissal of their cases, the actions they took, and which Plaintiffs now hope to collaterally attack through a declaratory judgment, were done in Defendants' judicial capacities. Therefore, the Court does not have the power to void those actions.

Second, Defendants are correct that if Plaintiffs took issue with their orders in the underlying cases, the proper avenue through which to address those objections was through an appeal to the D.C. or Ninth Circuits. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[A judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation."); *see also Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013) ("[D]eclaratory relief against a judge for final actions taken within his or her judicial capacity is . . . available by way of a direct appeal of the judge's order."). This limitation is based on sound logic, because "[w]hen a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court." *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986).

Plaintiffs argue that no appellate remedy existed in "actuality" because they have "EIGHT times" filed "fully paid appeals only to be met with unsigned, unpublished dismissals that failed to state the standard of review used, failed to address or mention a single issue

12

Plaintiffs raised on appeal, failed to explain how the Anti-Injunction Act supposedly applied to Plaintiffs' ACTUAL allegations, failed to mention why the equitable exception to the AIA supposedly does not apply to Plaintiffs['] discovery of the sequential, invariable systematic falsification of federal records concerning them, etc." Pls.' Resp. at 8. Plaintiffs go so far as to suggest that their appeals to the D.C. Circuit were not decided by D.C. Circuit judges at all, but were decided by the D.C. Circuit's Clerk Mark Langer. *Id.*[4]

However, a review of the affirmances of each of Judge Cooper's and Judge Jackson's decisions regarding the underlying cases demonstrates which D.C. Circuit judges reviewed Plaintiffs' appeals. *See* Compl. Exs. B–E, *McNeil v. Brown*, 17-cv-2602 (D.D.C.), ECF No. 1.[5] In each case, the D.C. Circuit judges, writing per curiam, explained their reason for affirming the dismissals of the underlying cases: either that the appellant had not shown that the district court erred in concluding that the underlying claims were barred by the Anti-Injunction Act or that the panel had determined that the claims fell within the ambit of the Anti-Injunction Act. *See id.* The fact that these panels of the D.C. Circuit determined, as Defendants did, that the district court lacked subject matter jurisdiction over Plaintiffs' underlying cases does not demonstrate that an appellate remedy did not exist. These appeals were adjudicated. Plaintiffs simply did not prevail.

---

[4] Plaintiffs make no mention of whether they appealed Judge Drozd's dismissal of *Ford v. Ciraolo-Klepper*, *et al.*, 17-cv-34 (E.D. Cal.) to the Ninth Circuit. *See generally* Am. Compl. Additionally, Plaintiffs do not address the fact that Magistrate Judge Harvey's Report and Recommendation was subject to an appeal, in the form of an objection, before it was adopted by the U.S. District Court judge assigned to the case. Plaintiffs filed such an objection, after which point Judge Kelly issued a detailed memorandum opinion explaining why he was adopting Magistrate Judge Harvey's Report and Recommendation. *See Ellis v. Jackson*, No. 16-cv-2312, 2018 WL 3359664 (D.D.C. June 19, 2018).

[5] A court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Moreover, a court may take judicial notice of docketed court records from other court proceedings. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

## B. The Remaining Motions

The parties have filed several other motions in this case. Because these motions have no bearing on the Court's subject matter jurisdiction in this case, they are denied as moot.

Plaintiffs have filed the following: (1) a motion to take judicial notice that the Office of the Treasury Inspector General for Tax Administration suspended operation of the IRS's Automated Substitute for Return system and to take judicial notice of the fact that Defendants have been sued only in their personal capacities, ECF. No. 5; (2) a motion to take judicial notice of the fact that Judge Cooper found that Plaintiffs had not violated an injunction issued in *Crumpacker v. Ciraolo-Klepper*, No. 16-cv-1053 (D.D.C.) by filing this case, and for default judgment, ECF No. 16; (3) a motion to strike a status report filed by defense counsel, ECF No. 18; (4) a motion to show authority and prove the interest of the United States in this case, ECF No. 21; (5) a renewed motion for default judgment, ECF No. 20; (6) an emergency motion to compel the production of documents concerning the Administrative Office of the United States Courts's finding that Defendants are being sued for actions taken within the scope of their employment, ECF No. 31; and (7) a motion to strike an opposition filed by defense counsel, ECF No. 37.

These motions fall into three major buckets: motions to take judicial notice, motions for default judgment, and motions to disqualify defense counsel. The motions to take judicial notice ask the Court to notice facts that do not affect the Court's determination that it lacks subject-matter jurisdiction over this case, and therefore they are denied as moot. Similarly, because the Court does not have subject matter jurisdiction over Plaintiffs' claims, Plaintiffs' motions for

default judgment are denied as moot.[6] Finally, as explained above, *see* note 3 *supra*, the Court does not have the power to review the DOJ's decision to provide legal representation to Defendants. What is more, none of these motions challenging the DOJ's involvement in this case have any bearing on the Court's independent determination that it does not have subject matter jurisdiction over this case. Therefore, each motion challenging the appearance and filings of defense counsel are denied as moot as well.

Defendants' one remaining motion in this case is for an order directing Plaintiffs to comply with Federal Rule of Civil Procedure 5(b)(1), which provides that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). Because this case is dismissed, their motion is denied as moot as well.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED**. Because this case has been dismissed for lack of subject matter jurisdiction, the remainder of the motions pending in this case are **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 26, 2018                              RUDOLPH CONTRERAS
                                                      United States District Judge

---

[6] In the alternative, Plaintiffs' motions for default judgment are denied because the Court lacks subject matter jurisdiction over Plaintiffs' claims. *See Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) ("[T]he procedural posture of a default does not relieve a federal court of its 'affirmative obligation' to determine whether it has subject matter jurisdiction over the action."); *see also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void.").